# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

G&G Closed-Circuit Events, LLC,

                    Plaintiff,          Case No. 23-12999

v.                                      Judith E. Levy
                                        United States District Judge
Brothers Bar & Grill, LLC, *et al.*,
                                        Mag. Judge David R. Grand
                    Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS BROTHERS BAR & GRILL, LLC AND DERRICK GRIFFIN [16]

Before the Court is Plaintiff G&G Closed-Circuit Events, LLC's amended motion for default judgment as to the two remaining Defendants, Brothers Bar & Grill, LLC ("BBG"), and Derrick Griffin. (ECF No. 16.) Plaintiff asserts several claims against BBG and Griffin: (1) violation of 47 U.S.C. § 605, (2) violation of 47 U.S.C. § 553, and (3) common law and statutory conversion. (ECF No. 1, PageID.5–10.)

For the reasons set forth below, Plaintiff's amended motion for default judgment is granted.

## I. Background

At the time of the events alleged in the complaint, BBG did business under the name of Jon's Good Time Bar & Grill ("the Bar"). (ECF No. 1, PageID.3.) On April 22, 2023, an investigator for Plaintiff, Waseem Assi, went to the Bar at around 11:59 pm, and saw that the Bar was displaying a pay-per-view boxing match held on that day between Gervonta "Tank" Davis and Ryan "King" Garcia ("the Program"). (ECF No. 16-2, PageID.121–122 ("First TV upon entry was showing DAVIS (purple shorts) taking selfies & TEAM pictures. Fight ended.").)

Plaintiff owns the exclusive nationwide television distribution rights to the program. (ECF No. 1, PageID.5.) Plaintiff alleges that the Program was displayed at the Bar without proper authorization. (ECF No. 1, PageID.6–7.)

Plaintiff filed the complaint on November 27, 2023. (ECF No. 1.) Defendants Griffin and BBG were served on February 12, 2024. (ECF Nos. 4, 5, 23.) As of the date of this order, neither Defendant filed a reply.

The Clerk entered defaults as to BBG on May 24, 2024 (ECF No. 10), and Griffin on May 28, 2024. (ECF No. 11.)[1] Plaintiff filed a motion for default judgment on July 1, 2024, and then filed an amended motion for default judgment on July 31, 2024. (ECF Nos. 14, 16.) On August 22, 2024, the Court held a hearing on the amended motion for default judgment. At this hearing, Plaintiffs and Griffin, representing himself *pro se*, made an appearance. The Court set a deadline of September 4, for the case to be resolved through settlement, or for Plaintiff to file declarations that would resolve issues regarding service on BBG and its request for attorney fees. Plaintiff timely filed three affidavits and an exhibit on September 4, 2024. (ECF Nos. 20, 21, 22, 23, 24.)

## II.   Legal Standard

Default judgment is governed by Federal Rule of Civil Procedure 55. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A default judgment may be entered by the clerk when a

---

[1] After the Clerk issued an entry of default as to BBG and Griffin, Plaintiff filed notices of voluntary dismissal as to the other Defendants, Andre Dixon and Eric Henderson. (ECF Nos. 12, 13.)

plaintiff's claim is for a sum certain – or a sum that may be made certain – and the defendant is neither a minor nor incompetent. Fed. R. Civ. P. 55(b)(1). In all other cases, the Court may conduct an accounting, determine the amount of damages, establish the truth of any allegations by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Determining whether to grant default judgment is within the sound discretion of the district court. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995).

## III.   Analysis

### A.   Jurisdiction and Service

Procedurally, "[i]n order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties, and must act in a manner consistent with due process." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Antoine*, 66 F.3d 105).

Plaintiff only seeks default judgment as to Count I (violation of 47 U.S.C. § 605). (ECF No. 16, PageID.105 n.1.) Pursuant to 28 U.S.C. § 1331, the Court has federal question subject matter jurisdiction over Plaintiff's claim because it arises under federal law.

### i.    *Derrick Griffin*

The Court has personal jurisdiction over Griffin, and he was properly served. Michigan law states that a court has general personal jurisdiction over an individual if the individual is (1) present in the state when process is served; (2) domiciled in the state at the time when process is served; or (3) consents to personal jurisdiction. Mich. Comp. Laws § 600.701. According to Federal Rule of Civil Procedure 4(e), an individual is properly served when a copy of the summons and complaint is delivered to the individual personally. Fed. R. Civ. P. 4(e)(2)(A).

Griffin was present in Michigan when process was served, Mich. Comp. Laws § 600.701(1), and the service was proper under Rule 4(e)(2)(A). Plaintiff submitted affidavits stating that Derrick Griffin was personally served the summons and complaint on February 12, 2024, at 9026 Mortenview Rd., Taylor, Michigan, which is located within the Eastern District of Michigan.[2] (ECF Nos. 4, 23.)

---

[2] Griffin made an appearance at the August 22, 2024 hearing. At this hearing, Griffin suggested that he was not personally served, which contradicts the affidavits submitted by Robert Trolian. (ECF Nos. 4, 23.) However, Griffin's statement was not sworn testimony, he ultimately did not object to the entry of default judgment and he has not made any filings in the case. Further, while Griffin may represent himself *pro se*, he cannot represent BBG *pro se* because it is an LLC. *See Loagues v. Timken*,

###### ii.     *Brothers Bar & Grill, LLC*

The Court has general personal jurisdiction over BBG. Michigan law states that a court has general personal jurisdiction over a partnership if it (1) was formed under the laws of Michigan; (2) consents to personal jurisdiction; or (3) carries on a continuous and systematic part of its general business within Michigan. Mich. Comp. Laws § 600.721.

Defendant was formed under the laws of Michigan and carries on a continuous or systematic part of its general business within Michigan. Plaintiff submitted records of the 2023 and 2024 Annual Statements for BBG, from the Michigan Department of Licensing and Regulatory Affairs, which indicates that it was formed under the laws of Michigan. (ECF Nos. 16-6, 16-7.)

As to service, Plaintiff demonstrated that BBG was properly served.

Federal Rule of Civil Procedure 4(h) states that a partnership may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is

---

908 F.3d 200, 203 (6th Cir. 2018). Thus, BBG remains unrepresented and has not made an appearance in this case.

one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant" or in the manner allowed by state law. Under Michigan law, service of process on a partnership may be made by "serving a summons and a copy of the complaint on any general partner or agent for service of process." Mich. Ct. R. 2.105(C)(1).

Plaintiff submitted an affidavit stating that BBG's resident agent, Derrick Griffin, was served on February 12, 2024. (ECF No. 23, PageID.183); *see also supra* n.2. As such, BBG was properly served.

### B.    Liability

Because a default has been entered, all of Plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *See Antoine*, 66 F.3d at 110. The facts must be "sufficient to support a finding of liability as to each defendant." *Cross*, 441 F. Supp. 2d at 848.

Plaintiff requests a finding of liability under 47 U.S.C. § 605.[3] Section 605 prohibits the transmission, receiving, intercepting, or

---

[3] Plaintiff states it may only recover damages under either 47 U.S.C. § 605 or 47 U.S.C. § 553. (ECF No. 16, PageID.105 n.1 (citing *J & J Sports Productions, Inc. v. Matti*, No. 13-13963, 2015 WL 143932, at *3 (E.D. Mich. Jan. 12, 2015); *J & J Sports Productions, Inc. v. Palumbo*, No. 4:12-cv-2091, 2012 WL 6861507 at *3 (N.D. Ohio Dec. 12, 2012)).) *See also International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (6th Cir. 1996). Plaintiff does not address its state and common law conversion

7

publishing of radio communications without authorization. 47 U.S.C. § 605(a). "Courts look to whether (1) the plaintiff had a propriety interest in the communication; (2) the defendant intercepted that communication; and (3) the defendant unlawfully divulged the communication to its patrons." *Joe Hand Promotions, Inc. v. Turner*, No. 3:19-CV-012, 2021 WL 1383267, at *3 (S.D. Ohio Apr. 13, 2021) (citing *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914–17 (6th Cir. 2001)). When the defendant is an individual, "plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities." *J & J Sports Prods., Inc. v. Matti*, No. 13-13963, 2015 WL 143932, at *3 (E.D. Mich. Jan. 12, 2015) (Borman, J.) (collecting cases).

Plaintiff has demonstrated that Defendants are liable under § 605.

First, Plaintiff has a proprietary interest in the communication. It alleged that it was "granted the exclusive nationwide television distribution (closed-circuit) rights" to the Program. (ECF No. 1, PageID.5;

---

claim in its amended motion for default judgment, so the Court will consider that count waived.

ECF No. 16-8, PageID.147 (Affidavit of Nicolas Gagliardi, President of G&G Closed Circuit Events LLC); ECF No. 16-8, PageID.156 (licensing agreement granting Plaintiff exclusive television distribution rights to the program).)

Second, the Bar unlawfully intercepted the Program. (ECF No. 1, PageID.6–7.) The affidavit of Nicolas Gagliardi, President of G&G Closed Circuit Events, states that interception could only have occurred unlawfully, such as purposefully misrepresenting the commercial establishment as a residential property or using an illegal unencryption device. (ECF No. 16-8, PageID.149–150.)

Third, the Bar unlawfully displayed the Program to its patrons. (ECF No. 1, PageID.6–7.) According to the affidavit of Waseem Assi, Assi went to the Bar on April 22nd, 2023 at 11:59 p.m. and witnessed a TV in the Bar displaying footage of the Program. (ECF No. 16-2, PageID.121 ("First TV upon entry was showing Davis (purple shorts) taking selfies & Team pictures. Fight ended.").)

Fourth, as to the liability of the individual Defendant, Plaintiff alleged that Griffin "had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those

same activities." *Matti*, 2015 WL 143932, at *3.[4] (ECF No. 1, PageID.3–4.) Plaintiff alleges that Griffin was "either aware of the unauthorized display of the program . . . and tacitly or explicitly approved same or was physical present at the time the program was displayed." (*Id.* at PageID.3–4.) Second, "[b]ecause Defendant [Griffin] is alleged to be an owner of [the Bar], it is logical to conclude that []he received a financial benefit from displaying the Program." *B O B Lounge, LLC*, 2018 WL 300362, at *4.

For the reasons set forth above, Plaintiff demonstrated liability as to both Defendants under 47 U.S.C. § 605.

## IV.   Damages

With respect to damages, "[t]he allegations in the complaint . . . are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."

---

[4] Plaintiff alleges that Griffin and the former Defendants were "the owner(s), and/or officer(s), shareholder(s), and/or operator(s), and/or licensee(s), and/or permitee(s), and/or person(s) in charge, and/or an individual(s) with dominion, control, oversight and management" over the Bar. (ECF No. 1, PageID.3–4.) This is sufficient to demonstrate a right and ability to supervise the activity. *J & J Sports Prods., Inc. v. B O B Lounge, LLC*, No. 17-11350, 2018 WL 300362, at *4 (E.D. Mich. Jan. 5, 2018) (Borman, J.); *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *3 (E.D. Mich. May 28, 2020) (Drain, J.). Further, Griffin is listed as the resident agent and member of BBG. (ECF No. 16-7, PageID.143–144.)

*Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sc. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also* Fed. R. Civ. P. 55(b)(2).

Under 47 U.S.C. § 605, the aggrieved party choses to recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff seeks statutory damages. (ECF No. 16, PageID.108.) The Court must determine statutory damages as follows:

> Plaintiff can recover statutory damages for each violation of not less than $1,000 or more than $10,000 as determined by the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). But where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain" the court can increase the award by the amount of $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

*B O B Lounge, LLC*, 2018 WL 300362, at *5.

Plaintiff requests $3,400 in statutory damages and $13,600 in enhanced statutory damages, for a total of $17,000 in damages. (ECF No. 16, PageID.112, 115.) However, the Court will award $6,800 in statutory damages.

Generally, courts in the Eastern District of Michigan evaluate statutory damages for § 605 cases by examining the circumstances of the violation, such as the price that the defendant should have paid for the

right to display the program, the number of patrons who viewed the program, the size and seating capacity of the establishment, whether the defendant obtained significant profits from the unauthorized display (such as a cover charge or drink specials), and the cost to the plaintiff in policing its broadcasting rights. *B O B Lounge, LLC*, 2018 WL 300362, at *5; *Joe Hand Promotions, Inc. v. My Shisha Lounge, LLC*, No. 19-CV-12200, 2020 WL 13504977, at *3 (E.D. Mich. June 11, 2020). The amount of statutory damages is within the Court's discretion. *Id.*

Here, Plaintiff only alleges one violation: the April 22, 2023 event. (ECF No. 1.) This appears to be the first time Defendants violated this law. (ECF No. 16, PageID.113.) Investigator Assi counted 20 patrons in the Bar between 11:59 PM and 12:04 AM. (ECF No. 16-2, PageID.122.) He also stated that the program was displayed on one of the five TVs in the Bar. (*Id.*) There is no indication that Defendants collected a cover to watch the Program at the Bar, or that Defendants advertised the display of the Program. (ECF No. 16, PageID.113; ECF No. 16-2, PageID.122.)

The rate charged by Plaintiff for commercial entities with a capacity of 1-100 was $1,700. (ECF No. 16-3, PageID.123.) According to the affidavit of Waseem Assi, the seating capacity of the Bar was 40.

12

(ECF No. 16-2, PageID.122.) As such, the Court will multiply the unpaid licensing fee by four to reach damages of $6,800. This amount is permitted under 47 U.S.C. § 605, as statutory damages for a single violation may range from $1,000 to $10,000.

The Court declines to award the enhanced statutory damages requested by Plaintiff. While the violation was "willful" and committed "for the purposes of direct or indirect commercial advantage or private financial gain," 47 U.S.C. § 605(e)(3)(C)(ii), the facts of this case do not indicate that a greater damages award is necessary.

For the reasons set forth above, the Court finds that $6,800 in total statutory damages is sufficient to both compensate Plaintiff and deter Defendants and others from further violations of 47 U.S.C. § 605.

## V.   Attorney Fees and Costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Because Plaintiff prevails, the Court will award reasonable attorney fees and costs.

The Sixth Circuit has set forth the following criteria for determining reasonable attorney fees:

13

> A starting point is to calculate the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours.

*Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (cleaned up).

Although there is a strong presumption that prevailing parties are entitled to a lodestar fee, *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000), the prevailing party "should submit evidence of the hours worked and the rates sought. If documentation of hours is inadequate, the district court may reduce the award accordingly." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). The party seeking fees has the burden of "documenting its work." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). In determining attorney fees and costs, the Court has significant discretion, which is "entitled to substantial deference." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. App'x 496, 499 (6th Cir. 2011).

In Plaintiff's amended motion for default judgment, Plaintiff requested $7,091.31 in attorney fees. (ECF No. 16, PageID.116.) However, the initial request had a variety of deficiencies: the amended motion lacked an affidavit verifying that the bill was accurate and true, there was no explanation regarding whether the hourly rates were reasonable given the attorneys' level of experience, attorney hourly rates were inconsistent,[5] certain time entries did not make sense,[6] and some time entries were related to other Defendants.[7] (ECF No. 16-4.) At the August 22, 2024 hearing, the Court instructed Plaintiff to submit additional materials regarding its request for attorney fees. Plaintiff did so on September 4, 2024. (ECF Nos. 20, 21, 22, 24.)

---

[5] For example, Michael Vomastek's hourly rate fluctuated between $200.00, $250.00, and $354.00 per hour between September 15, 2023, and June 28, 2024. (ECF No. 16-4, PageID.124–129.) Plaintiff did not explain these inconsistencies.

[6] Billed items included drafting, reviewing, and revising the notice of appearance for Chloe Lawrence on June 5, 2024, who has not made an appearance in this case. (ECF No. 16-4, PageID.124–125.)

[7] Plaintiff included charges regarding the voluntary dismissal of the other Defendants. (ECF No. 16-4, PageID.124 (entry on June 10, 2024, "Review, Edit, and File Voluntary Dismissal").)

15

Plaintiff currently requests $9,363.01 in fees and costs, a $2,271.70 increase from its initial request. (ECF No. 24, PageID.190.) The total amount of fees is $8,729.30, and the total amount of costs is $633.71.

### A. Determining a reasonable rate for counsel and legal assistants

Hourly rates for counsel are set according to the "prevailing market rate in the relevant community," which in this case is the Eastern District of Michigan. *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). A reasonable fee is intended to "attract competent counsel yet [] avoid[] producing a windfall for lawyers." *Id.* at 349.

As an initial matter, there are inconsistencies in the hourly rates requested. In Plaintiff's current request, the hourly rates are as follows:

- Michael Vomastek:
  - $300.00 per hour between 2/13/2024 and 6/28/2024
  - $250.00 per hour between 7/1/2024 and 8/5/2024
- Shawn Head:
  - $354.00 per hour on 6/28/2024
  - $350.00 per hour on 8/22/2024
- Chloe Lawrence:
  - $150.00 per hour between 9/15/2023 and 11/20/2023
  - $250.00 per hour between 7/1/2024 and 8/22/2024
- Devin Reynolds: $150.00 per hour
- Susanna Klimek: $150.00 per hour

16

(ECF No. 24.)[8] The attorneys' affidavits state that Michael Vomastek's hourly rate is $300.00 per hour, Chloe Lawrence's hourly rate is $250.00 per hour, Shawn Head's hourly rate is $354.00 per hour, and the legal assistants' (presumably Devin Reynolds and Susanna Klimek) hourly rate is $150.00 per hour. (ECF Nos. 20, 21, 22.)

Plaintiff does not explain the inconsistencies in the hourly rates requested by each attorney. As stated above, Plaintiff's initial request also included inconsistencies with regard to the hourly rates requested.[9] At the August 22, 2024 hearing, the Court requested that Plaintiff fix these inconsistencies. While Plaintiff has submitted additional materials at the Court's request, Plaintiff's current submission still contains unexplained inconsistencies with regard to hourly rates.

As to the justification of the rates themselves, the attorneys rely on the State Bar of Michigan's 2023 Economics of Law Survey Results. (ECF

---

[8] In the current request for attorney fees, the billing records only include initials, not full names.

[9] Michael Vomastek's rates ranged from $200.00, $250.00, and $354.00 per hour. (ECF No. 16-4.) Further, all three of the attorneys – Michael Vomastek, Chloe Lawrence, and Shawn Head – charged, at some point, a rate of $354.00 per hour, regardless of their level of experience. (*Id.*)

Nos. 20, 21, 22; *see* ECF No. 16-5.) Mr. Head states that he has 15 years of experience, has been recognized in the legal community, and is a managing member of his law firm. (ECF No. 20, PageID.174.) The median rate for attorneys with 11 to 15 years of experience is $305 per hour, the mean is $330 per hour, and the 75th Percentile is $395. (ECF No. 16-5, PageID.135.) Mr. Head notes that "the mean attorney hourly billing rate for a managing attorney was $348.00" and "[t]he mean hourly billing rate for attorneys practicing in Oakland County (south of M-59) was $354.00." (ECF No. 20, PageID.175; *see also* ECF No. 16-5, PageID.134, 136.) The Court finds that a $350.00 per hour rate for Mr. Head is reasonable considering his level of experience, location, and position.

Mr. Vomastek states that he has been practicing law since December 2021, that "the mean attorney hourly billing rate for an attorney practicing between 3 to 5 years was $300.00" and that "[t]he mean hourly billing rate for attorneys practicing business/commercial litigation was $392.00." (ECF No. 21, PageID.176–177; *see also* ECF No. 16-5, PageID.135, 137.) The Court finds that a rate of $250.00 per hour, not $300.00 per hour, is appropriate for Mr. Vomastek given his level of

experience. Mr. Vomastek has been practicing law for less than three years, and some of his billing entries reflect a rate of $250.00 per hour. (*See* ECF No. 24, PageID.187–188.)

Ms. Lawrence states that she has been practicing law since May 2024, that "the mean attorney hourly billing rate for an attorney practicing between 1 to 2 years was $251.00" and that "[t]he mean hourly billing rate for attorneys practicing business/commercial litigation was $392.00." (ECF No. 22, PageID.179–180; *see also* ECF No. 16-5, PageID.135, 137.) The Court finds that a rate of $200.00 per hour is appropriate for Ms. Lawrence given her level of experience. Ms. Lawrence has been practicing law for less than a year. However, the Court will retain the $150.00 rate for Ms. Lawrence for her work conducted between September 15, 2023 and November 20, 2023 because she was not a lawyer at that time.

Finally, Plaintiff does not offer much information about the requested hourly rates for legal assistants (who are presumably Devin Reynolds and Susanna Klimek). Mr. Head's affidavit requests a $150.00 per hour rate for the legal assistants (ECF No. 20, PageID.174), but Plaintiff does not include information about the legal assistants'

19

experience and qualifications. The legal assistants' work in this matter is significant: not including the discounted entries, their entries equate to 10 hours of work and $1,500 in fees.

The State Bar Reports do not provide information about legal assistant or paralegal rates. However, "[along with rates of $160 per hour, b]illing rates of anywhere from $125 [per hour] to $140 [per hour] have also been approved in this district." *Aljahmi v. Ability Recovery Servs., LLC*, No. 2:17-CV-13772, 2022 WL 891416, at *2 (E.D. Mich. Mar. 25, 2022) (citations omitted); *see also Argueta v. Argueta-Ugalde*, No. 22-12840, 2023 WL 4206071, at *2 (E.D. Mich. June 27, 2023) (awarding $135 per hour for paralegal work in a case where the petitioner failed to provide information about the paralegals).

Given Plaintiff's failure to provide adequate information about the legal assistants who worked on this case, the Court finds that Plaintiff should be awarded a rate that is toward the bottom of the scale in this District. Accordingly, Plaintiff is awarded $125.00 per hour for legal assistant work.

## B. Determining reasonable hours

Next, the Court must "calculate the number of hours reasonably expended on the litigation" and "exclude excessive, redundant, or otherwise unnecessary hours." *Wayne*, 36 F.3d at 531. There are a number of issues with Plaintiff's current request.

In performing a lodestar analysis, "[t]he district court . . . should exclude from [its] initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The party applying for an award of fees should exercise billing judgment with respect to hours worked." *Imwalle*, 515 F.3d at 552 (internal quotations omitted) (quoting *Hensley*, 461 U.S. at 437). "[T]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553. Courts may reduce requested fees when there are issues with excessive billing, inaccuracy, and vagueness. *Hensley*, 461 U.S. at 434 (holding that hours that are "excessive, redundant, or otherwise unnecessary" are not reasonable); *Imwalle*, 515 F.3d at 552 (requiring sufficient

documentation of hours expended). Here, a reduction is warranted because there are issues with excessive hours, redundancies, inconsistencies, and vagueness.

### i. *Excessive hours*

When requesting attorney fees, "[t]he applicant should exercise 'billing judgment' with respect to hours worked. . . ." *Hensley*, 461 U.S. at 437. Here, the amount of time spent on this matter is high compared to other 47 U.S.C. § 605 cases that ended in default judgment, which suggests that the hours billed may be excessive.

According to Plaintiff's billing records, Plaintiff dedicated 24.476 hours[10] to this matter from September 15, 2023 to July 1, 2024, which encompasses the filing of the complaint and the initial motion for default judgment. (ECF No. 24, PageID.185–187.) Plaintiff dedicated another 8.1 hours between July 8 and July 31, 2024, which culminated in the filing

---

[10] This number does not include Plaintiff's discounted billing entries. Plaintiff completely discounted 5 billing entries: March 6, 2024 entry by "SK", the June 5, 2024 entries related to the appearance for Chole A. Lawrence, and the June 10, 2024 entry by "DR" for "Review, Edit, and File Voluntary Dismissal." (ECF No. 24, PageID.186–187.) These entries add up to 1 hour. Plaintiff also partially discounted a 3.1 hour entry by "MJV" (presumably Mr. Vomastek) on May 24, 2024 by 4%, which indicates that Plaintiff is only charging for 2.976 hours of work. (*Id.* at PageID.186.) In total, the discounted entries account for about 1.124 hours.

of the amended motion for default judgment. (*Id.* at PageID.187–188.) Plaintiff also includes hours expended between August 1 and August 22, 2024, which equals 4.65 hours[11] and encompasses its counsels' preparation for and attendance at the hearing on Plaintiff's amended motion for default judgment. The total number of hours Plaintiff requests is 37.526 hours. (*Id.* at PageID.185–189.)

In similar cases in this Circuit (*i.e.*, cases involving violations of 47 U.S.C. § 605 that resolved in default judgment because the defendants never made an appearance), plaintiffs requested attorney fees for much lower amounts of time. In fact, the Court has not found a single, similar case in this Circuit that expended over 30 hours. *See My Shisha Lounge, LLC*, 2020 WL 13504977, at *3 (awarding attorney fees for 6 hours of work); *J & J Sports Prods., Inc. v. Shaba*, No. 17-CV-11316, 2018 WL 329904, at *2 (E.D. Mich. Jan. 9, 2018) (finding that 5.6 hours is reasonable); *B O B Lounge, LLC*, 2018 WL 300362, at *7 (awarding $1,641.50 in attorney fees with a rate of $245.00 an hour, suggesting 6.7

---

[11] This number does not include Plaintiff's partially discounted billing entry on August 22, 2024 by "CAL" (Ms. Lawrence). Ms. Lawrence spent 2.2 hours on "Commute and Attend Court on Motion for DJ," and discounted it by 75%, which would equal 0.55 hours. (ECF No. 24, PageID.189.)

hours of work); *Joe Hand Promotions, Inc. v. Revels*, No. 1:23-CV-92, 2023 WL 4534896, at *6 (S.D. Ohio July 13, 2023) (requesting fees for 4.5 hours of work); *Joe Hand Promotions, Inc. v. Young*, No. 1:22-CV-362, 2023 WL 5982824, at *4 (S.D. Ohio Sept. 14, 2023) (finding that 4.5 hours of work is reasonable); *J & J Sports Prods., Inc. v. Perr's Pub, Inc.*, No. 17-CV-11897, 2017 WL 4841467, at *7 (E.D. Mich. Oct. 26, 2017) (finding that 17.4 hours of work was reasonable in order granting default judgment where *pro se* defendants filed answers and a response to the motion for default judgment); *J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 417CV11155TGBDRG, 2019 WL 1584538, at *8 (E.D. Mich. Apr. 12, 2019) (awarding attorney fees for 25.3 hours of work in case that ultimately resolved in default judgment because time-intensive activities (like depositions) were conducted).

In fact, another court in the Sixth Circuit found that hours much lower than Plaintiff's were "excessive under the circumstances." *Joe Hand Promotions, Inc. v. One Hundred Pipers Club, Inc.*, No. 3:22-CV-00605-CHB-RSE, 2024 WL 4328772, at *8 (W.D. Ky. Jan. 9, 2024), *report and recommendation adopted*, No. 3:22-CV-605-CHB, 2024 WL 4328771 (W.D. Ky. Jan. 24, 2024). In that case, the plaintiff requested fees for 25.1

hours of work, which were spent "(1) advising [the client]; (2) drafting and filing the Complaint; (3) appearing in court; and (4) drafting and filing the Motion for Default Judgment and its supplement." *Id.* The court noted that the filings were "all relatively short," and that "[c]ompared to other anti-piracy cases resulting in the entry of default judgment in this District," the attorneys "spent over three times the number of hours as other attorneys." *Id.* While the filings in this case are longer than those in *One Hundred Pipers Club*,[12] the Court similarly finds that 37.526 hours of work is excessive under the circumstances.

### ii.   Additional billing entries

The current submission contains over twenty additional entries that were not included on the original request for attorney fees. (*See* ECF No. 16-4.) The attorney fees requested for these additional entries equals $3,728.10. (ECF No. 24, PageID.189.)

---

[12] In *One Hundred Pipers Club*, the complaint was 6 pages, the motion for default judgment was 5 pages, and the supplemental motion for default judgment was 8 pages. *Id.* at *8. Here, the complaint was 12 pages, the motion for default judgment was 21 pages, and the amended motion for default judgment was 23 pages. (ECF Nos. 1, 14, 16.) While the filings in this case were longer, they still do not explain the excessive amounts of hours expended in this case.

Plaintiff first filed a motion for default judgment on July 1, 2024, and filed an amended motion for default judgment on July 31, 2024. (ECF Nos. 14, 16.) The amended motion for default judgment, which included a request for attorney fees, included billing entries from September 15, 2023 through June 28, 2024. (ECF No. 16-4.) The current request for attorney fees includes billing entries from September 15, 2023, through August 22, 2024. (ECF No. 24.)

Plaintiff does not explain why its initial request for attorney fees did not include billing entries between June 28, 2024 and July 30, 2024. Plaintiff also does not explain why it would be reasonable for the Court to award these additional fees, given that it already had an opportunity to request them.

Further, Plaintiff does not explain why it is reasonable for the Court to award attorney fees for the work done to file both the initial motion for default judgment and the amended motion for default judgment. (ECF No. 24, PageID.187 (listing work done for the motion for default judgment); *id*. at PageID.188 (listing work done for the amended motion for default judgment).) *See Hensley*, 461 U.S. at 434 (holding that hours that are "excessive, redundant, or otherwise unnecessary" are not

26

reasonable). Plaintiff does not explain its reasoning in refiling its motion for default judgment, but to the extent that the initial motion for default judgment was deficient, it would not serve the interests of justice for Defendants to pay Plaintiff for its deficient filings. *See Mullin v. Butler*, No. 2:18-CV-00059, 2021 WL 6010756, at *2 (M.D. Tenn. Dec. 20, 2021) (reducing fee award when "awarding anywhere near the requested amount would be a windfall and would penalize [the defendants] for the mistakes made by [the plaintiff]"). This is especially true considering that no Defendant made a single filing in this case. As such, Plaintiff's request for fees for both the motion and the amended motion are redundant.

### iii.   Inconsistencies in billing records

Additionally, the Court is concerned with the accuracy of the billing records submitted by Plaintiff. There are inconsistencies between the initial and current request for attorney fees as to which attorney completed certain tasks. In the initial request, certain time entries are attributed to Michael Vomastek, while in the current request, these time entries are attributed to "CAL," who is presumed to be Chloe A. Lawrence (*see*  ECF No. 22 (Affidavit of Chloe A. Lawrence)):

27

| Date | Description | Attorney in initial request | Attorney in current request |
|------|-------------|------------------------------|------------------------------|
| 9/15/2023 | Review Case; Take Notes; Draft Complaint | Michael Vomastek | CAL |
| 10/17/2023 | Update Complaints with Piercing the Corp. Veil Language; Email SHH for Approval; | Michael Vomastek | CAL |
| 10/27/2023 | Review and Revise Demand Letter; Follow up with Devin and Isabella; | Michael Vomastek | CAL |
| 11/01/2023 | Finalize Demand Letter and Complaint; Send to Defendant; Enter Expenses; Calendar; | Michael Vomastek | CAL |
| 11/20/2023 | Finalize Complaint for Filing | Michael Vomastek | CAL |

(ECF No. 16-4, PageID.128–129; ECF No. 24, PageID.185.) Plaintiff does not explain why these entries were attributed to Michael Vomastek in its original filing, or otherwise explain why time entries have been changed after the fact. These discrepancies are especially concerning considering that Ms. Lawrence states in her affidavit that she has "been practicing law in Michigan since May 2024," and these entries reflect work that was done in 2023. (ECF No. 22, PageID.179.)

iv.    *Vague or ambiguous billing entries*

Some of Plaintiff's entries are so vague that the Court cannot determine with certainty that those requests are related to this case or are reasonable. *See Imwalle*, 515 F.3d at 553 (stating that documentation of hours "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation").

For example, Plaintiff includes an entry for May 28, 2024, which states that Michael Vomastek "Researched Matter; Reviewed and Revised Complaint for Filing." (ECF No. 24, PageID.186–187.) This entry equals 0.6 hours of work and $180.00 in requested fees. (*Id.* at PageID.186.) However, the complaint was filed months prior to this entry and there was no amended complaint. Similarly, Plaintiff included an entry for June 10, 2024, which states that Devin Reynolds "Save[d], Print[ed], and Calendar[ed] Notice of Telephonic Conference." (*Id.* at PageID.187.) This entry equals 0.1 hours of work, and $15.00 in requested fees. (*Id.*) The Court never issued a notice of telephonic conference in this case; as such, the accuracy of these entries is called into question.

29

v.    *Applying a reduction*

For the reasons set forth above, the Court is concerned about the reasonableness and accuracy of these records. Because of these concerns, a reduction of hours is required. *See Imwalle*, 515 F.3d at 553 (stating that inadequate documentation may result in a reduction of fees) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).

District Courts may reduce attorney fee awards "where the documentation of hours is inadequate." *Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 947 (6th Cir. 2020) (quoting *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014)). "[D]istrict courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The Court must provide a "clear and concise" explanation of the reasons for such a reduction, as it has above, enumerating and exemplifying the type of deficiencies present in Plaintiff's billing records. *Minor v. Comm'r of Soc Sec.*, 826 F.3d 878, 884 (6th Cir. 2016) (cleaned up).

30

Accordingly, due to Court's concerns about excessive hours, inconsistencies, redundancy, and vagueness, the Court believes that a 50 percent reduction is warranted, resulting in an award of attorney fees of $3,814.50. A 50 percent reduction is reasonable given the Court's level of concern. *See Richard*, 832 F. App'x at 947–78 (holding that the court's 50% reduction due to billing deficiencies is permitted and noting that "district courts throughout this circuit have instituted similarly sized reductions for billing deficiencies"); *One Hundred Pipers Club, Inc.*, 2024 WL 4328772, at *9 (recommending a reduction of 50% in 47 U.S.C. § 605 default judgment case where attorneys spent 25.10 hours in total). In fact, a total lodestar of $3,839.50 for 18.763 hours exceeds numerous awards in similar § 605 cases resolved by default judgment in the Eastern District of Michigan.[13]

The chart below summarizes the lodestar analysis set forth above and the resulting award:

---

[13] *See My Shisha Lounge, LLC*, 2020 WL 13504977, at *3 (awarding $2,050 in attorney fees and costs); *Shaba*, 2018 WL 329904, at *2 (awarding $1,930.90 in attorney fees and costs for 5.6 hours of work); *B O B Lounge, LLC*, 2018 WL 300362, at *7 (awarding $1,641.50 in attorney fees with a rate of $245.00 an hour, suggesting 6.7 hours of work); *Perr's Pub, Inc.*, 2017 WL 4841467, at *7 (awarding $4,091.50 in attorney fees for 17.40 hours of work in case where answers were filed and a defendant filed a *pro se* response to the motion for default judgment).

| | Hours Requested | Hours Awarded after 50% reduction | Awarded Rate per Hour | Lodestar |
|---|---|---|---|---|
| Chloe A. Lawrence (before May 2024)[14] | 4.2 hours | 2.1 hours | $150.00 | $315.00 |
| Chloe A. Lawrence (after May 2024) | 6.65 hours[15] | 3.325 hours | $200.00 | $665.00 |
| Michael Vomastek | 13.676 hours[16] | 6.838 hours | $250.00 | $1,709.50 |
| Shawn Head | 3.0 hours | 1.5 hours | $350.00 | $525.00 |
| Legal Assistants (Devin Reynolds, Susanna Klimek) | 10.0 hours[17] | 5.0 hours | $125.00 | $625.00 |
| Total | 37.526 hours | 18.763 hours | | $3,839.50 |

[14] Ms. Lawrence's fees are split before and after May 2024 because she began practicing law in May 2024. (ECF No. 22, PageID.179.)

[15] The Court did not include Ms. Lawrence's 0.1 hour June 5, 2024 entry that was 100% discounted. (ECF No. 24, PageID.187.) The Court also reduced her 2.2 hour August 22, 2024 entry to 0.55 hours because it was discounted by 75%. (*Id.* at PageID.189.)

[16] The Court did not include Mr. Vomastek's 0.1 June 5, 2024 entry that was 100% discounted. (*Id.* at PageID.187.) The Court also reduced his 3.1 hour May 24, 2024 entry to 2.976 hours because it was discounted by 4%. (*Id.* at PageID.186.)

[17] The Court did not include the legal assistants' entries that were 100% discounted: March 6, 2024 entry by "SK" for 0.1 hours; June 5, 2024 entry by "SK" for 0.4 hours; and June 10, 2024 entry by "DR" for 0.3 hours. (*Id.* at PageID.186–187.)

**C. Determining costs**

Finally, the Court considers the costs requested by Plaintiff. Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."

Plaintiff requests $644.71 in costs, and submitted an itemized list of expenses. (ECF No. 24, PageID.189–190.) The Court finds that these expenses – the filing fee, payment for service, and postage – are reasonable. Thus, the Court will award $644.71 in costs.

**VI.   Conclusion**

For the reasons set forth above, the Court GRANTS Plaintiff's amended motion for default judgment as to Brothers Bar & Grill, LLC, and Derrick Griffin (ECF No. 16), and judgment is entered in favor of Plaintiff and against Brothers Bar & Grill, LLC, and Derrick Griffin in the amount of $6,800.00. Additionally, Brothers Bar & Grill, LLC, and Derrick Griffin are directed to compensate Plaintiff for $3,839.50 in fees and $644.71 in costs.

IT IS SO ORDERED.

33

Dated: October 10, 2024                    s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 10, 2024.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ
                                           Case Manager